UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**GERALD SULLIVAN**, Personal
Representative of the Estate of John Sullivan,
deceased,

   Plaintiff,

v.

**CERTAIN UNDERWRITERS at LLOYDS**,
Subscribing to Policy Number 8024943-09,
Pursuant to Contract No. PM500,

   Defendant.

Case No. 3:15-cv-00926-YY

**FINDINGS AND
RECOMMENDATIONS**

YOU, Magistrate Judge:

## INTRODUCTION

On November 14, 2014, plaintiff filed a wrongful death action against George and Kathy Rumberger, *Sullivan v. Rumberger et al*, Case No. 3:14-cv-01806-YY (D Or Nov 14, 2014), as the personal representative to the estate of his deceased son, John Sullivan ("Sullivan"). Sullivan died after allegedly slipping from the weather deck of the motor yacht, the Trilogy, while aboard as a guest of the vessel's owner, George Rumberger ("Rumberger"). Rumberger and his former wife, Kathy, have a marine ocean insurance policy from defendant, Certain Underwriters at Lloyds, which includes hull insurance coverage and protection and indemnity coverage for the

Trilogy. Complaint, Ex 2.[1] However, on January 11, 2012, defendant refused to defend or indemnify the Rumbergers in the wrongful death lawsuit, claiming that the Trilogy was located outside the navigational limits of the policy when the accident occurred. Complaint, ¶ 17. In response, the Rumbergers assigned to plaintiff their right to sue defendant for defense and indemnification under the policy. Plaintiff then filed this action seeking a declaratory judgment that defendant breached its duty to defend the Rumbergers by refusing to tender defense in the wrongful death action. *Id* at ¶ 16.

The parties have filed cross motions for summary judgment (docket ## 14 & 17) on the issue of whether the insurance policy covers the location where the accident occurred that resulted in Sullivan's death.[2] Both parties agree that Sullivan was a guest aboard the Trilogy when it was moored on the Columbia River adjacent to the City of St. Helens, Oregon, when he fell overboard and died. Here, the material facts are not in dispute, so the only issue is whether either party is entitled to prevail as a matter of law.

## **STANDARDS**

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FRCP 56(a). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v.*

---

[1] George and Kathy divorced in November 2011, one month prior to Sullivan's accident. Complaint, ¶ 11 & Ex 3, p 1. The divorce decree awarded George ownership of the Trilogy. *Id*, ¶ 11. However, both were insureds under the policy. Complaint, ¶ 2, Ex 2, p 1 & Ex 5, p 1
[2] Defendant's motion also makes reference to the Trilogy traveling outside the Navigational Limit during its transit along the Pacific Coast of Washington south of the 48 degree north latitude to the Columbia River, the site of the accident. But the parties have confirmed that the reference is not the basis for an alternative argument for denying coverage.

2 – FINDINGS AND RECOMMENDATIONS

*Catrett*, 477 US 317, 323 (1986).  On a motion for summary judgment, the court "draws all justifiable inferences in favor of the non-moving party." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F3d 1119, 1125 (9th Cir 2014), citing *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 255 (1986).

## POLICY PROVISIONS

Defendant issued Policy No. 8024943-09 (the "Policy") to the Rumbergers on July 8, 2011.  The Policy was issued for the period of July 8, 2011, through July 8, 2012.  Complaint, Ex 2, p 1.  The Policy insured the Trilogy and the Rumbergers' potential liability "arising from the ownership, maintenance, use, or operation of the" Trilogy.  *Id*, p 6.

The protections and indemnity coverage provision reads:

> **LIABILITY INSURANCE – PROTECTION AND INDEMNITY**
>
> *We* agree to indemnify the *Insured Person* against the liability imposed by law upon the *Insured Person* for loss or damage arising from the ownership, maintenance, use or operation of the *Insured Property* resulting from bodily injury to or death of any person or damage to their property.

*Id*.  The coverage is limited by several conditions:

> **INSURING AGREEMENT**
>
> *We* provide the insurance described in this policy and any endorsements attached, based on the information declared in the application for insurance (including any other supplemental forms, questionnaires or declarations), for payment of the premium and subject to the terms and conditions set out herein.  **This policy contains general conditions and warranties which apply at all times**.  The Insurer has agreed to accept the risk of insuring the watercraft on the condition precedent that the insured will comply strictly and literally with these warranties and conditions.

Complaint, Ex. 2, p 4 (second emphasis added).  One of the general conditions is titled "Navigational Limits" and reads: "This policy applies only to losses which occur within the

3 – FINDINGS AND RECOMMENDATIONS

navigational limits as stated on the Declarations Page." *Id*, p 7.  The Declarations Page indicates that the Policy specifically includes Navigational Limits WA-3, which states:

> **NAVIGATIONAL LIMIT NO. WA-3**
>
> Warranted confined to the use and navigation of Washington and British Columbia including the inland lakes and rivers and including the west coast of Vancouver Island and the west coast of Queen Charlotte Islands, Puget Sound and adjacent waters, and the Straits of Juan de Fuca, southeastern Alaska not west of Cape Spencer, but warranted not to navigate to:  a) on the Fraser River east of the Sumas River; b) on the Pacific coast of Washington south of the 48 degree north latitude.

Complaint, Ex 2, p 9.

## FINDINGS

Defendant has refused coverage asserting that the Rumbergers violated the Navigational Limit by using the Trilogy "outside of Washington waters, in Oregon" at the time of the accident that led to Mr. Sullivan's death.  (Defendant Certain Underwriters at Lloyds' Motion for Summary Judgment (docket # 14), 2).  To determine whether a breach occurred requires interpreting the Navigational Limit in the policy, specifically the words that limit use to "Washington and British Columbia including the inland lakes and rivers," and determining whether the vessel's location at the time of the accident was outside that perimeter.

1. <u>An insurance policy is construed according to its plain meaning unless an ambiguity exists.</u>

Marine insurance contracts are governed by federal admiralty law when there is an established federal rule concerning the issue to be decided and by state law when there is not. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 US 310, 313–314 (1955)*; see also Bohemia, Inc. v. Home Ins. Co.*, 725 F2d 506, 510 (9th Cir 1984)(state law controls an issue of maritime contract interpretation only in the absence of a federal statute, a judicially fashioned admiralty

rule, or a need for uniformity in admiralty practice). Here, the parties agree that Washington law applies in construing the terms of the policy.[3]

Under Washington law, "[t]he court examines the terms of an insurance contract to determine whether under the plain meaning of the contract there is coverage." *Kitsap Cty. v. Allstate Ins. Co.*, 136 Wash 2d 567, 576, 964 P2d 1173, 1178 (1998). "[A] contract provision is ambiguous when its terms are uncertain or when its terms are capable of being understood as having more than one meaning." *Mayer v. Pierce Cty. Med. Bureau, Inc.*, 80 Wash App 416, 421, 909 P2d 1323, 1326 (1995); *see also Allstate Ins. Co. v. Hammonds*, 72 Wash App 664, 670, 865 P2d 560, 562 (1994)("[a] clause in a policy is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable"). Under the rule of *contra proferentem*, ambiguities in insurance contracts must be construed against the insurer. *Labberton v. Gen. Cas. Co. of Am.,* 53 Wash 2d 180, 183, 332 P2d 250, 252 (1958); *see also Farmers Ins. Co. of Washington v. USF&G Co.*, 13 Wash App 836, 842, 537 P2d 839, 843 (1975)("an interpretation most favorable to the insured must be applied if the policy is fairly susceptible to two different interpretations, even though a different…meaning may have been intended by the insurer").

2. The policy is ambiguous.

The material fact is undisputed: at the time of the incident, the Trilogy was moored in the Columbia River in waters adjacent to St. Helens, Oregon. The parties dispute interpretation of the following language from the Navigational Limit of the policy:

> Warranted confined to the use and navigation of Washington and British Columbia including *the inland lakes and rivers*[.]

---

[3] Defendant's Amended Response and Reply (docket # 24), 2; Plaintiff's Reply to Defendant's Motion for Summary Judgment (docket # 23), 1.

Complaint, Ex 2, p 9 (emphasis added).  This language is uncertain or capable of more than one meaning.  *Mayer*, 80 Wash App at 421.  Thus, the warranty is ambiguous and should be construed against the drafter and in favor of coverage of Mr. Sullivan's claims.

Defendant argues that the policy restricts navigation to water bodies within Washington's *land mass* and excludes areas along Washington shores, such as the Columbia River.  In support, defendant cites the 1990 Black's Law Dictionary definition of "inland": "Within a county, state, or territory; within part of a land mass."  INLAND, Black's Law Dictionary (6th ed 1990).  A more recent edition of Black's Law Dictionary contains a similar definition:  "The interior part of a country or region, away from the coast or border."  INLAND, Black's Law Dictionary (10th ed 2014).  Defendant contends that, because the Trilogy was not moored within Washington's land mass, it was not located on an "inland river."

Alternatively, defendant suggests that the Trilogy was not within Washington's "inland waters" because it was not within the territorial limit of the state, i.e., the Washington side of the Columbia River.  Defendant cites the Washington Constitution, which provides that Washington's southern border with Oregon starts at the Pacific Ocean and runs "up the *middle channel*" of the Columbia River.  Wash Const, Art XXIV, § 1 (emphasis added).  The Act of Congress Admitting Oregon into the Union in 1859 (1859 Act of Congress) also defines Oregon's boundary as the middle of the Columbia River:

> [From] a point due west and opposite the middle of the north ship channel of the Columbia River; thence easterly, to *and up the middle channel of said river*, and, where it is divided by islands, up the middle of the widest channel thereof, [ ... ] including jurisdiction in civil and criminal cases upon the Columbia River and Snake River, concurrently with States and Territories of which those rivers form a boundary in common with this State.

6 – FINDINGS AND RECOMMENDATIONS

11 Stat 383 (1859) (emphasis added).  The Oregon and Washington Columbia River Compact of 1958 does the same.  ORS 186.520; RCW 43.58.050.  Defendant cites Washington's administrative code governing operation of recreational vessels, which defines the term "inland waters" as "waters within the *territorial* limits of Washington state[.]"  Wash Admin Code 352-60-020 (emphasis added).  Thus, defendant contends, because the Trilogy was moored adjacent to St. Helens, along the Oregon shore and on the Washington side of the Columbia River, it was not within the territorial limits of Washington when the incident occurred.

Defendant's arguments are flawed for a number of reasons.  First, the fact that defendant suggests two different interpretations of the term "inland rivers" illustrates how the language in the Navigational Limit is unclear and subject to more than one interpretation.  On the one hand, defendant states that the term "inland rivers" is defined as bodies of water within Washington's land mass.  Alternatively, defendant contends that the policy could be interpreted to include the Washington side of the Columbia River, which would not be within the state's land mass.  These interpretations are exclusive of each other, but both are reasonable, thus showing the language is ambiguous.

Additionally, defendant ignores that a large portion of the Columbia River is completely surrounded by land mass, as illustrated in the map below[4]:

///

///

///

///

///

---

[4] Kmusser, self-made, based on USGS and Digital Chart of the World data, CC BY-SA 3.0, https://commons.wikimedia.org/w/index.php?curid=3844725.

7 – FINDINGS AND RECOMMENDATIONS



The court may take judicial notice of maps. *United States v. Trenary*, 473 F2d 680, 682 (9th Cir 1973); *see also Lee v. City of L.A.*, 250 F3d 668, 689 (9th Cir 2001)(under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record" as long as the facts are not "subject to reasonable dispute"). As the map above shows, the Columbia River is largely an inland river throughout Washington, which raises certain questions: Does the fact that a large portion of the Columbia River lies within Washington's land mass mean the entire river should be classified as an "inland river" under the terms of the policy? Or did the parties intend for only that portion of the Columbia River that is landlocked to be covered by the policy and the rest of it not? The answers to these questions are unclear, further showing how the language at issue is ambiguous.

Finally, defendant's second theory – that the policy covers only the Washington side of the middle of the Columbia River – raises a question of practical application: Given weather

conditions and other factors that affect boating, is it practical that a five ton yacht would navigate through the Columbia without ever crossing over the middle of it? Otherwise stated, was it the intention of the parties that the yacht would have to hug the Washington shoreline while traveling through the Columbia River? "When a court examines a contract, it must read it 'as the average person would read it; it should be given a 'practical and reasonable rather than a literal interpretation', and not a 'strained or forced construction' leading to absurd results.'" *Allstate,* 72 Wash App at 667. Defendant's interpretation of the Navigational Limit challenges common sense.

Plaintiff's position is not without its own flaws. Plaintiff cites *Nielsen v. Oregon*, 212 US 315 (1909), in which the Supreme Court held that Washington and Oregon have concurrent jurisdiction over the entire Columbia River under the 1859 Act of Congress.[5] However, jurisdiction is arguably different from geography. *See W.J. Jones & Son, Inc. v. Stocker*, 271 F Supp 437, 438 (D Or 1967)(interpreting the 1958 Compact and noting that geography and jurisdiction are distinguishable: "District of Oregon is a jurisdictional entity, not a geographical one.").

Plaintiff also cites to numerous Washington statutes and administrative codes, which define the "waters of the state" to include rivers within its "jurisdiction":

> RCW 88.46.010(26): "Waters of the State" includes….rivers ….within the jurisdiction of the State of Washington;
>
> RCW 90.48.020: Wherever the words "waters of the state" shall be used in this chapter, they shall be used to include….rivers…. within the jurisdiction of the State of Washington;
>
> RCW 90.56.510(27): "Waters of the state" includes….rivers ….within the jurisdiction of the State of Washington;

---

[5] This concurrent jurisdiction extends to both states in civil as well as criminal matters. *Nielson,* 212 US at 320.

9 – FINDINGS AND RECOMMENDATIONS

> WAC 173-340-200: "Surface water" means….rivers….under the jurisdiction of the State of Washington; and
>
> WAC 352-60-020: "Waters of the State" means any waters within the territorial limits of Washington State.

Those definitions, however, are for specific Washington laws relating to oil spills and water pollution. Given their specific and limited application, they arguably do not inform the decision to be made in this case.

Plaintiff additionally cites federal law in which the term "inland" is used to describe the "waters of the state" over which the state exercises jurisdiction and not only waters within a state's geographical boundaries. Plaintiff cites a series of United States Supreme Court cases that defined the extent to which the federal government granted jurisdiction of navigable waters to coastal states. *See United States v. Maine*, 469 US 504 (1985); *United States v. Louisiana*, 394 US 11(1969); *United States v. State of Cal.*, 381 US 139 (1965). Those cases defined the boundaries of the states' inland or internal waters[6] within the meaning of the Submerged Lands Act of 1953, 43 USC §§ 1301–1356b, through which the federal government granted to the states exclusive title and ownership to lands beneath navigable waters. *United States v. State of Cal.*, 381 US at 145–46. The Court adopted the definitions contained in the Geneva Convention on the Territorial Sea and the Contiguous Zone defining the line marking the seaward limit of inland waters of the states. *Id* at 165–67; *United States v. Maine*, 469 US at 512–13.

The definitions crafted by the Convention are complicated, but plaintiff relies on the general edict that "[w]aters landward of the coastline therefore are internal waters of the State, while waters up to three miles seaward of the coastline are . . . within a State's boundary as part

---

[6] The cases use the terms interchangeably. *See United States v. Louisiana*, 394 US at 22.

of the 3-mile ring referred to as the marginal sea." *United States v. Maine*, 469 US at 513.

Under this definition, arguably any body of water is internal or inland under the Submerged Lands Act if it is landward of Washington's coastline, which is identified as the "line of ordinary low water along that portion of the coast which is in direct contact with the open sea and the line marking the seaward limit of inland waters." *Id.* (citing 43 USC § 1301(c)). Following plaintiff's line of reasoning, all of the Columbia River is landward of Washington's coastline and considered an inland or internal body of water of Washington.

Defendant interprets this line of cases differently. It argues that the cases actually support its argument that the "inland waters" of Washington are those waters on the landward side of the territorial limits of Washington State, i.e., the Washington side of the boundary between Oregon and Washington that runs down the middle of the Columbia River. In any case, these Supreme Court cases have limited applicability for interpreting the policy in this case because each answers questions of title to coastal waters off the United States coastline and not to interstate river waters. More importantly, these cases only muddy the waters of whether the Navigational Limit should be defined by geographical or jurisdictional terms. In its dicta, the Court noted the dual influence of geography and jurisdiction in dividing navigable waters: "Whether particular waters are inland has depended on historical as well as geographical factors." *United States v. Louisiana*, 394 US at 23. For instance, the Court noted that "areas of water closely connected to the shore, although they do not meet any precise geographical test, may have achieved the status of inland waters by the manner in which they have been treated by the coastal nation." *Id*. Contrary to plaintiff's claim, a closer look at these cases reveals that they do not favor jurisdiction over geography in defining navigable waters. Because ambiguous insurance provisions must be construed against the drafter, the Navigational Limit should be

interpreted such that the policy allows use and navigation over the waters off of St. Helens, Oregon, in the Columbia River where the Trilogy was moored at the time of the accident that led to Mr. Sullivan's death.[7]

## RECOMMENDATIONS

Defendant's Motion for Summary Judgment (docket #14) should be DENIED and Plaintiff's Motion for Summary Judgment (docket #17) should be GRANTED.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due Friday, September 23, 2016. If no objections are filed, then the Findings and Recommendations will go under advisement on that date. If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

DATED September 6, 2016.

/s/Youlee Yim You
Youlee Yim You
United States Magistrate Judge

---

[7] In its briefing, defendant correctly argues that enforcement of the contract is subject to strict compliance under both federal admiralty law and the terms of the contract. Defendant Certain Underwriters at Lloyds' Amended Response, 2. The court cannot enforce strict compliance of a contract where the terms are ambiguous.

12 – FINDINGS AND RECOMMENDATIONS