## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **GERALD SULLIVAN, Personal Representative of the Estate of John Sullivan**, | Case No. 3:15-cv-926-YY |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **CERTAIN UNDERWRITERS at LLOYDS, Subscribing to Policy Number 8024943-09, Pursuant to Contract No. PM500**, | |
| Defendant. | |

Clayton Huntley Morrison, THE LAW OFFICE OF CLAYTON H. MORRISON, LLC, 8625 S.W. Cascade Avenue, Suite 605, Beaverton, OR 97008. Of Attorneys for Plaintiff.

Curt H. Feig and Christopher W. Nicoll, NICOLL BLACK & FEIG, PLLC, 1325 Fourth Avenue, Suite 1650, Seattle, WA 98101. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

United States Magistrate Judge Youlee Yim You issued Findings and Recommendation

in this case on September 6, 2016. ECF 25. Judge You recommended that Plaintiff's Motion for

Summary Judgment be granted and Defendant's Motion for Summary Judgment be denied.

PAGE 1 – OPINION AND ORDER

Specifically, Judge You found that the "navigational limits" clause contained in the relevant insurance policy was ambiguous and must be construed against the insurer and in favor of coverage. Defendant filed objections to the Findings and Recommendation, objecting to Judge You's finding that the clause is ambiguous and her recommendation that Defendant's motion be denied and Plaintiff's motion be granted.  ECF 29.

## STANDARDS

### A.  Review of a Magistrate Judge's Findings and Recommendation

Under the Federal Magistrates Act ("Act"), the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If a party files objections to a magistrate's findings and recommendations, "the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; Fed. R. Civ. P. 72(b)(3).

### B.  Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for

the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

When parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence, regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## BACKGROUND

The Court adopts Judge You's recitation of the facts and relevant policy provisions. Briefly, Plaintiff, as personal representative of his deceased son, filed a wrongful death action against George and Kathy Rumberger, owners of a yacht insured by Defendant. Defendant refused to defend or indemnify Mr. and Mrs. Rumberger, asserting that the yacht was located outside the navigational limits of the policy when the accident occurred. Mr. and Mrs. Rumberger assigned to Plaintiff their right to sue Defendant, and Plaintiff filed this action

seeking a declaratory judgment that Defendant breached its duty to defend Mr. and Mrs. Rumberger by refusing to tender a defense in the wrongful death action.

The insurance policy includes a clause providing that the "policy applies only to losses which occur within the navigational limits as stated on the Declarations Page." ECF 1-2 at 7 (Complaint Ex. 2 at 7). The Declarations Page incorporates Navigational Limit No. WA-3. *Id.* at 1. This navigational limit clause provides that losses are covered only when the vessel is "confined to the use and navigation of Washington and British Columbia including the inland lakes and rivers." *Id.* at 9. At the time of the accident, the insured yacht was located on the Oregon side of the Columbia River near the City of St. Helens, Oregon. Defendant asserts that because the yacht was not in Washington at the time of the accident, coverage is excluded based on the navigational limits clause.

## DISCUSSION

The Court reviews *de novo* whether the navigational limits clause is ambiguous. Because the parties agree that Washington law applies in construing the terms of the policy, the Court will not perform a choice of law analysis as to whether federal law may apply. *See Yu v. Albany Ins. Co.*, 281 F.3d 803, 808 (9th Cir. 2002) (noting that courts should "apply state law unless an established federal rule addresses the issue raised, or there is a need for uniformity in admiralty practice"); *see also Guam Indus. Servs., Inc. v. Zurich Am. Ins. Co.*, 787 F.3d 1001, 1004 n.1 (9th Cir. 2015) (declining to announce or disclaim a "federal rule" that "admiralty law requires the strict construction of express warranties in marine insurance contracts; breach of the express warranty by the insured releases the insurance company from liability even if compliance with the warranty would not have avoided the loss" (quotation marks omitted)); *but see Port Lynch, Inc. v. New England Int'l Assurety of Am., Inc.*, 754 F. Supp. 816, 824 (W.D. Wash. 1991) ("With respect to the interpretation of navigational and trading warranties, the Court holds that

PAGE 4 – OPINION AND ORDER

there is both a judicially fashioned admiralty rule which applies and a need for uniformity in admiralty practice." (referencing the "federal rule" of strict construction not yet adopted by the Ninth Circuit, as acknowledged in *Guam Industries*)).

## A.  Insurance Contract Interpretation Under Washington Law

Under Washington law, "[t]he court examines the terms of an insurance contract to determine whether under the plain meaning of the contract there is coverage." *Kitsap Cty. v. Allstate Ins. Co.*, 964 P.2d 1173, 1178 (Wash. 1998). "Undefined terms in an insurance policy are given their ordinary and common meaning, not their legal, technical meaning." *Moeller v. Farmers Ins. Co. of Washington*, 267 P.3d 998, 1002 (Wash. 2011). An insurance "contract as a whole 'must be read as the average person would read it; it should be given a practical and reasonable rather than a literal interpretation, and not a strained or forced construction leading to absurd results.'" *Id.* (quoting *Eurick v. Pemco Ins. Co.*, 738 P.2d 251, 252 (Wash. 1987)).

"'[I]f the policy language is clear and unambiguous, we must enforce it as written; we may not modify it or create ambiguity where none exists.'" *Kut Suen Lui v. Essex Ins. Co.*, 375 P.3d 596, 600 (2016), *as amended on denial of reconsideration* (Aug. 15, 2016) (quoting *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (2005)) (alteration in original). "Language in an insurance contract is ambiguous if it is susceptible to two different but reasonable interpretations." *Id.*; *see also Vadheim v. Cont'l Ins. Co.*, 734 P.2d 17, 20 (Wash. 1987) ("A clause in a policy is ambiguous when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable."); *Mayer v. Pierce Cty. Med. Bureau, Inc.*, 909 P.2d 1323, 1326 (Wash. Ct. App. 1995) ("[A] contract provision is ambiguous when its terms are uncertain or when its terms are capable of being understood as having more than one meaning.").

If an insurance contract contains an ambiguity, a court "may rely on extrinsic evidence of the intent of the parties to resolve the ambiguity."[1] *Lui*, 375 P.3d at 600. If ambiguity remains after examination of the applicable extrinsic evidence, then such ambiguity "is resolved against the insurer and in favor of the insured. But while exclusions should be strictly construed against the drafter, a strict application should not trump the plain, clear language of an exclusion such that a strained or forced construction results . . . ." *Id.* at 600-01 (quoting *Quadrant*, 110 P.3d at 737); *see also Holden Manor Homeowners Ass'n v. Safeco Ins. Co. of Am.*, 2016 WL 3349339, at *3 (W.D. Wash. June 16, 2016) (quoting *Moeller*, 267 P.3d at 1001-02) (noting that it is "well-settled Washington law that in insurance contracts, 'ambiguity is resolved in the favor of the policyholder, and exclusionary clauses are construed strictly against the insurer.'").

## B.  Whether the Navigational Limits Clause is Ambiguous

The navigational limits clause expressly limits coverage to "the use and navigation of Washington and British Columbia including the inland lakes and rivers." The Columbia River, where the yacht was located at the time of the accident, is a river. The Court finds, however, that reading the navigational limits clause presents several questions. The first question is whether the navigational limits confines coverage of the vessel to the "rivers" of Washington or the "inland rivers" of Washington (meaning that "inland" modifies both "lakes" and "rivers" so that the clause means "inland lakes" and "inland rivers" as opposed to the clause meaning "inland lakes" and "rivers"). The second question is whether the Columbia River is either an "inland river" or a "river" of Washington. The third question is whether the fact that a vessel is on the Oregon side

---

[1] The parties here did not provide or rely on any extrinsic evidence as to the intent of the contracting parties. Thus, if the Court finds the navigational limits clause ambiguous, it will be construed against the insurer and for coverage.

of the Columbia River would render that vessel no longer in a Washington "river" or

Washington "inland river."

There are two cases outside of Washington, applying similar rules of construction for

insurance policies, that are instructive. The first is *Zautner v. Liberty Mutual Insurance Co.*, 382

So.2d 106 (Fla. Dist. Ct. App. 1980). In that case, the parties disagreed over whether the phrase

"newly acquired outboard motors or boats" limited coverage to both "outboard motors" and

"outboard boats," or only to "outboard motors" with no limit on the type of boat, whether

inboard or outboard. The trial court granted summary judgment to the insurance company, but

the appellate court reversed, explaining:

> Simply stated, it is at least uncertain as to whether the word
> "outboard," as used in the term "outboard motors or boats,"
> modifies only the word "motors" to which it is juxtaposed, or
> modifies the word "boats" as well. If the company desired to insure
> only newly acquired "outboard boats," it could and should have
> made that clear by using the term "outboard motors or outboard
> boats," or indeed, the very expression, "outboard boats and
> motors" actually contained in another part of the same policy. The
> use of a different term is itself some indication of a more expansive
> "newly acquired" insuring agreement. In any event, it is surely not
> an unreasonable construction of the provision in question that it
> insures all newly acquired boats or newly acquired "outboard
> motors."

*Id.* at 107 (citation omitted).

Similarly, the Court finds that the phrase "inland lakes and rivers" is ambiguous as to

whether it includes "inland lakes" and all "rivers" or only "inland lakes" and "inland rivers." It is

a reasonable interpretation that the navigational limits clause here confines coverage for vessels

to Washington rivers generally, and not just inland Washington rivers. This construction is

important because Defendant argues that "both banks of a river would need to be entirely inside

the land of the state of Washington (inland) in order to be within the approved navigation area."

ECF 29 at 6. If, however, the navigational limits clause provides coverage for a vessel tha

navigates on Washington rivers, and not only Washington inland rivers, Defendant could not

reasonably assert that the Columbia River is not a river "of Washington." Under that

interpretation, there would be coverage because the yacht was on the Columbia River at the time

of the accident.

Further, regardless of whether the clause limits coverage to "inland rivers" or "rivers,"

the Court rejects Defendant's interpretation. For this analysis, the Court finds instructive the case

of *Lemar Towing Co. v. Fireman's Fund Insurance Co.*, 352 F. Supp. 652 (E.D. La. 1972). In

*Lemar Towing*, a vessel traveling down the Mississippi became lost in fog, ended up on the

Mississippi side of the Louisiana-Mississippi state line in the Gulf, and sank. *Id.* at 655-57. The

court noted that it was stipulated that "the vessel sank . . . within the territorial waters of the State

of Mississippi, but less than 50 miles from the shore of Louisiana." *Id.* at 658. The insurance

clause at issue in *Lemar Towing* contained a navigational limits clause that confined coverage to

vessels navigating in "the inland and coastal waters of Louisiana including the Mississippi River

not north of Baton Rouge and not exceeding fifty (50) miles offshore." *Id.* The insurance

company interpreted the clause as "limiting coverage to an area within the Louisiana State

boundary lines extended 50 miles offshore." *Id.* The court rejected this interpretation, stating

> We feel, in the case at bar, that it would be equally unreasonable if
> one were allowed to travel 50 miles off shore from a given point
> on the Louisiana coast and be within coverage, but be denied
> coverage for venturing into Mississippi waters considerably less
> than 50 miles from that same point on the Louisiana coast.
> Common sense would, therefore, dictate that the interpretation of
> the navigation limits proposed by the underwriter is unacceptable.

*Id.* at 659. The court in *Lemar Towing* concluded "that the vessel had not ventured outside the

navigation limits provided in the policy." *Id.* The court noted, however, that "[s]uch a result

would have been reached in any event for when the terms of a policy are not clear and are

PAGE 8 – OPINION AND ORDER

subject to different construction, as is the language here, said terms are construed against the underwriter who has included them in its policy." *Id.*

The Court finds similar considerations applicable in the pending case. Defendant interprets the navigational limits as including all of the Columbia River when it is surrounded by Washington on both sides, but only the Washington side of the Columbia River when it traverses between Oregon and Washington. This interpretation would lead to absurd and unjust results and is rejected. For example, assume vessel A is the insured vessel and it is traveling on the Washington side of the Columbia River when vessel B comes directly at it from the opposite direction. Vessel A veers to the Oregon side of the river in an effort to avoid a collision, but the two boats nevertheless collide. Under Defendant's interpretation of the navigational limits clause, Vessel A has veered out of the navigational limits and there is no coverage. Assume, however, that instead of Vessel A veering to the Oregon side in an attempt to avoid a collision, vessel B veers to the Oregon side and so Vessel A remains on the Washington side, but a collision still occurs. Then, there is coverage because Defendant considers Vessel A to be in Washington. It is not reasonable to interpret an insurance contract as only covering a vessel on one side of the river but not on the other. The river is moving, there are hazards and other vessels on the river, and coverage cannot reasonably be determined by the luck (or lack thereof) of encountering an obstacle that can be avoided by travelling on the Washington side of the river versus the Oregon side.

Moreover, in other contexts jurisdiction over the entire Columbia River has been given to both Oregon and Washington, and the Court finds this to be the reasonable understanding of an average person. *See Nielsen v. Oregon*, 212 U.S. 315 (1909) (holding that Washington and Oregon have concurrent jurisdiction over the entire Columbia River under the 1859 Act of

Congress, for both civil and criminal matters). If Defendant intended this general understanding to be different in the context of coverage for a vessel travelling on the Columbia River, it could have more clearly stated as much. If Defendant intended a vessel to have full use of the vast majority of the Columbia River (which begins in British Columbia and travels south through Washington, turning west at the Oregon-Washington border and traveling to the Pacific Ocean), but then only half of the river when it serves as the border between Washington and Oregon, Defendant could have clearly stated that in the policy. The policy does not state that coverage for a vessel while travelling on the Columbia River is suddenly altered at the point that the river comes to the Washington-Oregon border, and the average person would not understand the policy to so mean. *See Moeller*, 267 P.3d at 1002 (noting that a court must read an insurance clause "as the average person would read it" and must give it a "practical and reasonable rather than a literal interpretation"). Nor is it a practical or reasonable interpretation of the policy to mean that when the Columbia River traverses the Oregon-Washington border, coverage only applies to the portion of the river on the Washington side. *Id.*

Accordingly, the Court finds that the navigational limits clause is ambiguous and construes it against the insurer and in favor of coverage. In the alternative, the Court follows *Lemar Towing* and concludes that the applicable navigational limits include the entirety of the Columbia River where the accident occurred, and not just the portion of the river located on the Washington side.

/ / /

/ / /

**CONCLUSION**

The Court adopts the conclusion of the Findings and Recommendation (ECF 25) for the

reasons stated in this Opinion and Order. Defendant's Motion for Summary Judgment (ECF 14)

is DENIED and Plaintiff's Motion for Summary Judgment (ECF 17) is GRANTED.

**IT IS SO ORDERED**.

DATED this 22nd day of December, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge